Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BRIAN L. TAYLOR,

    *Plaintiff*,

v.

CDS ADVANTAGE SOLUTIONS and
MARC SULLIVAN,

    *Defendants*.

Civil Action No. 20-2803

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    Presently pending before the Court is Defendant Club Demonstration Services, Inc.'s ("CDS") motion to compel arbitration and dismiss the current action in favor of arbitration pursuant to Fed. R. Civ. P. 12(b)(6) and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. D.E. 15. The Court reviewed the parties' submissions[1] and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant's motion is **DENIED**.

**I. INTRODUCTION**

    *Pro se* Plaintiff Brian L. Taylor filed his Complaint in New Jersey state court on September 6, 2019. Plaintiff alleges that his termination from CDS caused a relapse in his undisclosed symptoms and that this amounts to a violation of the Family Medical Leave Act and the Americans

---

[1] Defendant's brief in support of its motion is referred to as "Def. Br.," D.E. 15-1; Plaintiff's brief in opposition is referred to as "Plf. Opp.," D.E. 16; and Defendant's reply brief is referred to as "Def. Reply," D.E. 19.

with Disabilities Act. D.E. 1 at 10, 11. CDS removed the matter to this Court on March 13, 2020, D.E. 1, and filed an Answer, D.E. 5.[2] CDS subsequently filed the instant motion, arguing that because Plaintiff never opted out of an arbitration program that CDS's parent company expanded to cover all of its employees, Plaintiff is required to arbitrate his claims. D.E. 15.

## II. LEGAL STANDARD

In cases in which a motion to compel arbitration can be decided without additional evidence, courts should apply the Rule 12(b)(6) standard to the face of the pleadings. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013); *see also Sauberman v. Avis Rent a Car Sys., L.L.C.*, No. 17-0756, 2017 WL 2312359, at *2 (D.N.J. May 26, 2017) ("Where arbitrability is apparent on the face of the complaint, a Rule 12(b)(6) standard of review should be applied to the motion to compel arbitration."). The Rule 12(b)(6) standard, however, is not appropriate when the complaint does not contain the "requisite clarity to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement[.]" *Guidotti*, 716 F.3d at 774 (internal quotations and citations omitted). In *Guidotti*, the Third Circuit explained that

> [u]nder the first scenario, arbitrability not being apparent on the face of the complaint, the motion to compel arbitration must be denied pending further development of the factual record. The second scenario will come into play when the complaint and incorporated documents facially establish arbitrability but the non-movant has come forward with enough evidence in response to the motion to compel arbitration to place the question in issue. At that point, the Rule 12(b)(6) standard is no longer appropriate, and the issue should be judged under the Rule 56 standard.

*Id*. at 774 (citations omitted).

---

[2] It does not appear that Plaintiff has served Defendant Marc Sullivan.

Plaintiff's Complaint does not mention an arbitration agreement. As a result, the Court must go beyond the face of the pleading and review the text of the relevant documents provided by CDS to determine arbitrability. In doing so, the court uses the Rule 56 standard to "ensur[e] that arbitration is awarded only if there is an express, unequivocal agreement to that effect." *Id*. (internal quotation omitted). The *Guidotti* court further explained that

> [I]f the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Id.* at 776.

Under Federal Rule of Civil Procedure 56, a moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id*. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id*. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III. ANALYSIS

The FAA "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009) (citing 9 U.S.C. § 1 *et seq.*). "Congress designed the FAA to overrule the judiciary's longstanding reluctance to enforce agreements to arbitrate . . . and in the FAA expressed a strong federal policy in favor of resolving disputes through arbitration." *Id.* (internal quotations omitted). "The strong federal policy favoring arbitration, however, does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to

4

the dispute." *Id.* Instead, "[b]efore compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Id.* (citing *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)). In this instance, the first inquiry is dispositive.

To determine the validity of an arbitration agreement, courts apply "ordinary state-law principles that govern the formation of contracts." *Kirleis*, 560 F.3d at 160 (quoting *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)). To be enforceable pursuant to New Jersey law, an arbitration agreement "must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim."[3] *Leodori v. CIGNA Corp.,* 814 A.2d 1098, 1104 (N.J. 2003). Moreover, "[a]n agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 312-13 (N.J. 2014) (quoting *NAACP of Camden Cnty. E. v. Foulke Mgmt.*, 24 A.3d 777, 790 (N.J. App. Div. 2011)). Mutual asset requires that the parties understand the terms to which they purportedly agree. "[B]ecause arbitration involves a waiver of the right to pursue a case in a judicial forum, 'courts take particular care in assuring the knowing asset of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent.'" *Id.* (quoting *Foulke*, 24 A.3d 777, 790-91).

On September 14, 2018, CDS mailed Plaintiff a package that contained a copy of the Notice Regarding Arbitration Agreement Opt-Out Policy, the Mutual Agreement to Arbitrate Claims, and

---

[3] Defendant applies New Jersey law to its arguments. Plaintiff does not dispute the suitability of New Jersey law. Thus, the Court will apply New Jersey law. *See Manley Toys, Ltd. v. Toys R Us, Inc.,* No. 12-244737, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case." (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999))).

5

an Arbitration Agreement Opt-Out Form. Romero Cert. ¶ 4, D.E. 15-2. CDS mailed Plaintiff the package because its parent company, Daymon Worldwide, Inc., was expanding its arbitration program to all employees. *Id.* ¶¶ 2-3. Employees were provided with an option to participate in, or opt out of, the program. *Id.* ¶ 3. In the package, "Plaintiff received instructions regarding opt out procedures and was notified that the opt out deadline was October 26, 2018." *Id.* ¶ 6. CDS sent the package to Plaintiff's home address, and the materials were not returned to CDS as undeliverable. *Id.* ¶ 4, 7; Supp. Romero Cert. ¶ 5, D.E. 19-1. In addition, CDS sent the package via regular mail in accordance with its practice and procedures. Romero Cert. ¶ 7; Supp. Romero Cert. ¶ 3. CDS argues that because Plaintiff never opted out of the arbitration program, he must now arbitrate his claims. Def. Br. at 9-11.

Plaintiff states that he "has never seen this Arbitration Agreement or 'Document' before." Plf. Opp. at 1. CDS counters that Plaintiff's statement is insufficient to overcome the presumption that he received the package, as established by the common-law mailbox rule. Def. Reply at 2. Under the mailbox rule, "if a letter properly directed is proved to have been either put into the post-office or delivered to the postman, it is presumed . . . that it reached its destination . . . and was received by the person to whom it was addressed." *Guerra v. Consol. Rail Corp.*, 936 F.3d 124, 136 (3d Cir. 2019) (quoting *Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 319 (3d Cir. 2014)). The mailbox rule creates a rebuttable inference of delivery if the party establishes that the item was mailed. There is a "strong presumption" of receipt if the mailing was sent via certified mail "because it creates actual evidence of delivery in the form of a receipt." *Lupyan*, 761 F.3d at 319. But where, as here, mail is sent via regular mail, there is a weaker presumption of receipt. *Id.* Receipt, however, can be established "circumstantially by introducing evidence of business practices or office customs pertaining to mail." *Id.* Once the presumption of receipt is established,

6

the party arguing that he never received the mailing has the burden to produce evidence that rebuts the presumption. *Id.* at 320-21. "[A] single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue is sufficient to defeat summary judgment," even if the affidavit is "self-serving." *Id.*

In instance, CDS provided an affidavit from an employee who works in human resources. She "is knowledgeable about Daymon's arbitration opt-out program," through which CDS sent Plaintiff's mail. Supp. Romero Cert. ¶ 4. CDS's affiant, however, did not personally mail Plaintiff's package and it is not clear from her affidavits if she was even involved in the program when it was rolled out. Further, CDS does not have any direct evidence demonstrating that Plaintiff received the package. This "unsupported, second-hand account[] cannot invoke the mailbox's presumption." *Guerra*, 936 F.3d at 137 (concluding that "bare assertions—artfully phrased in the passive voice" by affiants who were not personally involved in the mailing process were insufficient to establish receipt through the mailbox rule). Accordingly, CDS fails to meet its burden, meaning that it does not receive the presumption of receipt under the mailbox rule.

Even if the Court were to conclude there was a presumption of delivery, because CDS mailed the package via regular mail, "at most, that presumption would be 'very weak.'" *Id.* at 137 n.7 (quoting *Lupyan*, 761 F.3d at 319-20). As a result, Plaintiff's statement that he has never seen the Arbitration Agreement would defeat the weak presumption of receipt, creating a jury question. *Id.* ("Stacked against OSHA's denial of receipt, that presumption would disappear."). The Court cannot conclude, as a matter of law, that Plaintiff received the package containing the arbitration agreement.

In short there is a genuine dispute of material fact as to whether Plaintiff received the relevant package, thereby precluding summary judgment. Consequently, CDS motion is denied.

## IV. CONCLUSION

For the reasons set forth above, Defendant Club Demonstration Services, Inc.'s motion to compel arbitration and dismiss the current action in favor of arbitration, D.E. 15, is **DENIED without prejudice**. An appropriate Order accompanies this Opinion.

Dated: April 30, 2021

                                                               John Michael Vazquez, U.S.D.J.