# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN L. TAYLOR, | Case No: 2:20-cv-02803-JMV-MAH |
| Plaintiff, | |
| v. | *Civil Action* |
| CDS ADVANTAGE SOLUTIONS, and MARC SULLIVAN, | **Document Electronically Filed** |
| Defendants | |

---

## BRIEF IN SUPPORT OF DEFENDANT, CLUB DEMONSTRATION SERVICES, INC.'S RENEWED MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT PURSUANT TO F.R.C.P. 12 (b)(6)

---

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
10 Madison Avenue, Suite 400
Morristown, New Jersey 07960
Tel: (973) 656-1600
Fax: (973) 656-1611
*Attorneys for Defendant*
*Club Demonstration Services, Inc.*

On the Brief:
 Jocelyn A. Merced, Esq.

II.

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ..................................................................................i

INTRODUCTION ............................................................................................1

PROCEDURAL HISTORY................................................................................2

STATEMENT OF FACTS ................................................................................3

     A.    Expansion of Arbitration Program to CDS Associates ........................3

     B.    Plaintiff Confirms Receipt of Arbitration Agreement .........................4

     C.    Plaintiff Agreed to a Valid and Binding Agreement to Arbitrate the Claims at Issue ..................................................4

     D.    Plaintiff Violates the Agreement and Files Suit in State Court ..................................................................................9

LEGAL ARGUMENT.......................................................................................9

POINT I

THE COURT MUST ENFORCE THE PARTIES' EXPRESS AGREEMENT AND COMPEL PLAINTIFF TO ARBITRATE HIS CLAIMS AGAINST CDS ....................................................................9

     A.    Federal Policy Strongly Favors Enforcement of Arbitration Agreements.......................................................10

     B.    Plaintiff Now Admits that he Received the Arbitration Agreement ............................................................................13

     C.    The Arbitration Agreement Is Valid and Enforceable .......................13

IV.

1.    Plaintiff Clearly and Unambiguously Agreed to Arbitrate All Claims Covered by The Arbitration Agreement ................................................................14

2.    Plaintiff Received Sufficient Consideration to Support the Agreement to Arbitrate..........................................18

D.    Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement ...........................................................19

POINT II

THE COURT MUST DISMISS THE COMPLAINT AND COMPEL ARBITRATION.........................................................................21

CONCLUSION ....................................................................22

IV.

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Atalese v. U.S. Legal Servs. Grp., L.P.*,
    219 N.J. 430 (2014) ......................................................................................14

*Blair v. Scott Specialty Gases*,
    283 F.3d 595 (3d Cir. 2002) .........................................................................18

*Bourgeois v. Nordstrom*,
    2012 WL 42917 (D.N.J. Jan. 9, 2012)..........................................................18

*Caruso v. Ravenswood Developers*,
    337 N.J. Super. 499 (App. Div. 2001).........................................................13

*Century Indem. Co. v. Certain Underwriters at Lloyd's*,
    584 F.3d 513 (3d Cir. 2009) .........................................................................11

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001)......................................................................................11

*Dancu v. Coopers & Lybrand*,
    778 F. Supp. 832 (E.D. Pa. 1991), *aff'd,* 972 F.2d 1330
    (3d Cir. 1992)................................................................................................21

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)......................................................................................10

*Descafano v. BJ's Wholesale Club, Inc.*,
    2016 WL 1718677 (D.N.J. Apr. 28, 2016)............................................11, 16

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995)......................................................................................13

*Garfinkel v. Morristown Obstetrics & Gynecology Associates, P.A.*,
    168 N.J. 124 (2001) ......................................................................................20

IV.

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991)..........................................................................................10

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
  716 F.3d 764 (3d Cir. 2013) .........................................................................12

*Hemberger v. E\*Trade Fin. Corp.*,
  2007 WL 4166012 (D.N.J. Nov. 19, 2007) ....................................................14

*Hogan v. Bergen Brunswig Corp.*,
  153 N.J. Super. 37 (App. Div. 1977)..............................................................18

*Horowitz v. AT&T Inc.*,
  2019 WL 77306 (D.N.J. Jan 1, 2019)..............................................................19

*Jayasundera v. Macy's Logistics & Operations, Department of
Human Resources*,
  2015 WL 4623508 (D.N.J. Aug. 3, 2015) .......................................................15

*Khazin v. TD Ameritrade Holding Corp.*,
  2014 WL 940703 (D.N.J. March 11, 2014) .....................................................11

*Leodori v. Cigna Corp.*,
  175 N.J. 293 (2003), *cert. denied*, 540 U.S. 938 (2003) ...................11, 13, 16

*Martindale v. Sandvik, Inc.*,
  173 N.J. 76 (2002) .........................................................................11, 13, 20

*Morando v. NetWrix Corp.*,
  2012 WL 1440229 (D.N.J. April 24, 2012) ...........................................11, 12

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)............................................................................................10

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*,
  636 F.2d 51 (3d Cir. 1980) ............................................................................12

*Sabre Glbl, Inc. v. Shan*,
  2016 WL 1365996 (D.N.J. Apr. 6, 2016).......................................................11

iv

IV.

*Salvadori v. Option One Mtg. Corp.*,
    420 F. Supp. 2d 349 (D.N.J. 2006)............................................................11

*Sarbak v. Citigroup Global Markets, Inc.*,
    354 F. Supp. 2d 531 (D.N.J. 2004)............................................................13

*Scheck v. Alberto-Culver Co.*,
    417 U.S. 506 (1974)............................................................................10

*Schmell v. Morgan Stanley & Co.*,
    2018 WL 1128502 (D.N.J. Mar. 1, 2018) .....................................................15

*Seus v. John Nuveen & Co., Inc.*,
    146 F.3d 175 (3d Cir. 1998), *cert. denied*, 525 U.S. 1139 (1999) ...............21

*Uddin v. Sears, Roebuck & Co.*,
    2014 WL 1310292 (D.N.J. Mar. 31, 2014) ............................................16, 17

**Statutes**

9 U.S.C. §§ 3 and 4 ..........................................................................10, 21

42 U.S.C. §12112 et seq............................................................................1

29 U.S.C. § 2611 et seq.............................................................................1

**Rules**

FED. R. CIV. P. 56 ....................................................................................12

v

# INTRODUCTION

This is an employment matter in which Plaintiff Brian Taylor ("Plaintiff"), a former employee of Defendant Club Demonstration Services, Inc. (improperly named as "CDS Advantage Solutions") ("Defendant", "CDS" or "the Company") alleges that CDS discriminated against him in violation of the Family and Medical Leave Act, 29 U.S.C. § 2611 *et seq.* ("FMLA") and the Americans with Disabilities Act, 42 U.S.C. §12112 *et seq.* ("ADA").  In September 2018, CDS mailed Plaintiff its Mutual Agreement to Arbitrate Claims ("Arbitration Agreement") as well as materials describing the arbitration program, which explicitly notified Plaintiff that, if he failed to affirmatively "opt out" of the arbitration program, he would be deemed to have agreed that all disputes with CDS would be resolved exclusively in arbitration.  Plaintiff never opted out.

This Court previously denied CDS's Motion to Dismiss and Compel Arbitration without prejudice solely based on Plaintiff's opposition asserting that he had "never received or even seen" a copy of the Arbitration Agreement.  However, while this matter was on appeal, Plaintiff admitted that he had in fact received the Arbitration Agreement and still has a copy. CDS hereby renews its Motion based on Plaintiff's new admission and requests that the Court dismiss Plaintiff's Complaint and compel Plaintiff to pursue his claims in arbitration.

1

IV.

**PROCEDURAL HISTORY**

Plaintiff filed the instant lawsuit on September 6, 2019 asserting violations of the FMLA and ADA in connection with the termination of his employment from CDS. CDS timely removed to the matter to this Court on March 13, 2020, after being served with the Summons and Complaint via certified mail on February 26, 2020. [D.E. 1]. CDS filed an Answer to Plaintiff's Complaint on May 18, 2020, and asserted that Plaintiff's claims in the Complaint, or some of them, are subject to binding arbitration pursuant to an arbitration agreement as an Affirmative and Separate Defense. [D.E. 5].

On September 25, 2020, CDS filed a Motion to Dismiss and Compel Arbitration, which this Court denied without prejudice based on Plaintiff's representation that he had never received the Arbitration Agreement at issue. [D.E. 15; D.E. 32]

On May 28, 2021, CDS filed its' Notice of Appeal of this Court's Order and this Court granted CDS's motion to stay the District Court matter pending appeal. [D.E. 38; D.E. 52].

On June 16, 2023, the Third Circuit granted Defendant's motion to voluntarily dismiss the pending appeal as moot based on Plaintiff's admission that he had recently rediscovered a copy of the Arbitration Agreement, which he previously

IV.

thought he had not received and issued an Order remanding the matter to this Court. [D.E. 99].

On July 10, 2023, this Court granted CDS's request to lift the stay in light of the Third Circuit's Certified order and granted CDS permission renew its Motion to Compel Arbitration based on Plaintiff's newly admitted evidence confirming timely receipt of the Arbitration Agreement. [D.E. 103].

## STATEMENT OF FACTS

### A.    Expansion of Arbitration Program to CDS Associates

1.    CDS is an in-house event marketing provider for Costco Wholesale Corporation that provides services worldwide. (Certification of Dierra Romero, hereinafter "Romero Cert." at ¶2).

2.    CDS is wholly-owned by Daymon Worldwide, Inc. Plaintiff Brian Taylor is a former employee of Defendant. (Romero Cert. at ¶2).

3.    Plaintiff commenced his employment with CDS on or about May 24, 2012 as a part-time Sales Advisor. (Romero Cert. at ¶3).

4.    In September 2018, Daymon expanded its arbitration program to apply to all associates, including Plaintiff. (Romero Cert. at ¶5).   The arbitration program provided associates with the option to participate in the program or opt out. (Romero Cert. at ¶6).

IV.

**B.     Plaintiff Confirms Receipt of Arbitration Agreement**

5.     In connection with the roll out, on or about September 14, 2018, CDS sent Plaintiff a package containing a copy of the Notice Regarding Arbitration Agreement Opt-Out Policy ("Opt Out Notice") (Romero Cert. at Exhibit A); the Mutual Agreement to Arbitrate Claims ("the Arbitration Agreement") (Romero Cert. at Exhibit B) and an Arbitration Agreement Opt-Out Form ("Opt-Out Form") (Romero Cert. at Exhibit C) via regular mail to his home address, 120 Vassar Avenue, Newark, NJ 07112. (Romero Cert. at ¶7).

6.     By letter dated April 19, 2023,  Plaintiff confirmed receipt of the Arbitration Agreement advised this Court that he "discover[ed] [his] copy of CDS's Arbitration Agreement paperwork . . . which [he] previously thought [he] did not receive", and provided the Court with a copy of the recently rediscovered documents. [D.E. 92; 92-1].

**C.     Plaintiff Agreed to a Valid and Binding Agreement to Arbitrate the Claims at Issue**

7.     Plaintiff was provided the option to opt out of entering into the Arbitration Agreement.  (Romero Cert. at ¶8).

8.     Plaintiff received instructions regarding opt out procedures and was notified that the opt out deadline was October 26, 2018. (Romero Cert. at ¶9).

IV.

9.     The Opt Out Notice that Plaintiff received provides clear instructions for "Opting-Out" of the Arbitration Agreement in bold language.  In particular, the instructions state:

> **If you do not want the Agreement to apply to you, then you must complete the enclosed Arbitration Agreement Opt-Out Form and send a signed copy via e-mail to arbitrationoptout@daymon.com pursuant to the instructions on the form no later than OCTOBER 26, 2018.**
>
> If you do not e-mail or mail a completed Opt-Out Form by OCTOBER 26, 2018, and you continue to work for the company after that date, you will be required to resolve disputes that you may have with Daymon or any affiliate through arbitration (and vice versa), in accordance with the terms of the attached Agreement.

(Romero Cert. at Exhibit A) (emphasis in original).

10.     Furthermore, the Arbitration Agreement Opt-Out Form Plaintiff received with the Arbitration Agreement sets forth a clear opt-out procedure and the opt-out deadline in capital letters:

> **INSTRUCTIONS – PLEASE READ CAREFULLY:**
>
> IF YOU WANT THE MUTUAL AGREEMENT TO ARBITRATE CLAIMS SENT WITH THIS FORM TO APPLY TO YOU, THEN YOU DO NOT NEED TO DO ANYTHING AND MAY DISREGARD THIS FORM.
>
> IF YOU DO NOT WANT THE MUTUAL AGREEMENT TO ARBITRATE CLAIMS SENT WITH THIS FORM TO APPLY TO YOU, THEN YOU MUST COMPLETE THIS FORM AND RETURN IT BY ONE OF THE FOLLOWING METHODS NO LATER THAN 11:59pm PACIFIC STANDARD TIME ON OCTOBER 26, 2018:

IV.

- EMAIL         A         SCANNED         COPY         TO
  arbitrationoptout@daymon.com

- BY MAIL TO DAYMON ATTN: LEGAL DEPARTMENT
  18100 VON KARMAN AVENUE, SUITE 1000, IRVINE, CA
  92612

**CURRENT ASSOCIATES WILL AUTOMATICALLY BE
DEEMED TO HAVE CONSENTED TO THE AGREEMENT IF
THEY CONTINUE TO WORK FOR THE COMPANY PAST
OCTOBER 26, 2018, UNLESS THEY SUBMIT THIS FORM
BEFORE THAT DATE**. IF YOU NEED ASSISTANCE, PLEASE
CONTACT YOUR HR REPRESENTATIVE, WHO CAN ASSIST
YOU WITH SUBMITTING THIS FORM.

(Romero Cert. at Exhibit C) (emphasis added).

11.    The Opt Out Notice, Arbitration Agreement and Opt-Out Form each

separately advise Plaintiff that his continued employment signified his assent to the

Arbitration Agreement.    First, the "Notice Regarding Arbitration Agreement"

section of the Opt Out Notice advised Plaintiff that:

"[c]urrent associates will **automatically** be deemed to have consented
to the Agreement if they continue their employment beyond October
26, 2018, unless they timely submit the enclosed "Arbitration
Agreement Opt-Out Form" in the manner specified below. Therefore,
it is important that you carefully read this notice and the enclosed
documents."

(Romero Cert. at Exhibit A) (emphasis in original).

Second, the Arbitration Agreement itself states:

**"[i]f you continue to work for the Company or any affiliate after
October 26, 2018, you will be bound by this Agreement unless you
timely execute and return the Arbitration Agreement Opt-Out
Form provided to you with this Agreement."**

IV.

(Romero Cert. at Exhibit B) (emphasis added).

Third, the Opt-Out Form also emphasizes in capital letters that:

**CURRENT ASSOCIATES WILL AUTOMATICALLY BE DEEMED TO HAVE CONSENTED TO THE AGREEMENT IF THEY CONTINUE TO WORK FOR THE COMPANY PAST OCTOBER 26, 2018, UNLESS THEY SUBMIT THIS FORM BEFORE THAT DAT**E.

(Romero Cert. at Exhibit C) (emphasis added).

12.    Plaintiff never opted out of the Arbitration Agreement. (Romero Cert. at ¶11).

13.    Plaintiff continued to work for CDS until the termination of his employment on May 1, 2019, and is therefore, bound by the terms of the Arbitration Agreement. (Romero Cert. at Exhibits B and C; ¶12).

14.    Pursuant to the Arbitration Agreement, the parties agreed to arbitrate all claims and controversies between the parties, including all statutory claims including, but not limited to, claims arising under the Americans with Disabilities Act and other federal, state and local employment laws.  In pertinent part, the Arbitration Agreement provides:

> [Y]ou and Daymon Worldwide Inc. (hereinafter, the "Company") agree to resolve in binding arbitration all claims and controversies ("Claims") that the Company may have against you, or that you (and no other party) may have against any of the following: (1) the Company, (2) its' officers, directors, employees or agents in their capacity as such or otherwise, (3) the Company's parents, subsidiaries and affiliated entities (hereinafter, "Affiliated Entities"), (4) the Company's and its

7

IV.

> Affiliated Entities' benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates and agents, and (5) all successors and assigns of them.
>
> For purposes of this Agreement, Claims include, but are not limited to, all statutory, contractual and/or common law claims, including but not limited to claims arising under . . . the Americans with Disabilities Act; and other federal, state and local employment laws.

(Romero Cert. at Exhibit B, ¶1).

15.     The Opt-Out Notice cover document also contains a specific "Question and Answer" which plainly addresses that by agreeing to be bound by the Arbitration Agreement, arbitration would be the sole and exclusive remedy for all covered disputes and that the parties were waiving their right to proceed in court or to receive a trial by jury:

> **Q:**   **What is the Agreement?**
>
> **A:**   The Agreement provides that you and Damon mutually agree to resolve specified disputes through arbitration, rather than in court. By agreeing to resolve disputes through arbitration, you and Damon are giving up the right to a court or jury trial on claims covered by the Agreement.

(Romero Cert. at Exhibit C, p. 1).

16.     Further, the Arbitration Agreement itself clearly states that "[u]nder this Agreement, **any Claims will be decided by an arbitrator rather than by a judge or jury**. Both you and the Company may seek to enforce this Agreement." (Romero Cert., Exhibit B, ¶3). (emphasis added).

IV.

### D.   Plaintiff Violates the Agreement and Files Suit in State Court

17.    Despite having agreed to arbitrate all employment claims, Plaintiff filed a Complaint in the Superior Court of New Jersey, Law Division, Essex County, on September 6, 2019 asserting, violations of the FMLA and ADA in connection with the termination of his employment from CDS. [D.E. 1 at Exhibit A].

18.    According to the above-quoted plain language of the Arbitration Agreement, Plaintiff's claims fall squarely within the scope of the Arbitration Agreement and his Claims must be compelled to arbitration.

## LEGAL ARGUMENT

## POINT I

## THE COURT MUST ENFORCE THE PARTIES' EXPRESS AGREEMENT AND COMPEL PLAINTIFF TO ARBITRATE HIS CLAIMS AGAINST CDS

The Court must enforce the parties' express agreement and compel Plaintiff to arbitrate his claims against CDS.  It is undisputed that Plaintiff and CDS are parties to a valid and enforceable arbitration agreement.  The parties clearly and unambiguously agreed to waive their rights to a court or jury trial and that arbitration would be the exclusive remedy for all claims covered by the arbitration agreement. Moreover, Plaintiff received adequate consideration in exchange for his agreement to arbitrate, including continued employment with CDS, as well as CDS's agreement in exchange to arbitrate any claims it may have against Plaintiff.  Finally, it is

IV.

undisputed that Plaintiff's claims fall within the scope of the agreement to arbitrate.

There is a strong public policy in favor of arbitration, and federal courts have long

favored arbitration as an efficient and effective means for resolving disputes between

parties. Under this liberal standard, and given the undisputed facts identified above,

the Court should compel arbitration and dismiss the Complaint.

### A. Federal Policy Strongly Favors Enforcement of Arbitration Agreements

Federal policy strongly favors arbitration as an efficient and effective means

for resolving disputes between parties. Congress enacted the Federal Arbitration

Act ("FAA") to reverse then-existing judicial hostility to arbitration agreements and

"to place arbitration agreements upon the same footing as other contracts." *Gilmer*

*v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *Dean Witter Reynolds,*

*Inc. v. Byrd*, 470 U.S. 213, 219-22 (1985); *Scheck v. Alberto-Culver Co.*, 417 U.S.

506, 510 n.4 (1974). To that end, the FAA provides that arbitration agreements are

"valid, irrevocable, and enforceable . . ." 9 U.S.C. § 2. Any party aggrieved by the

alleged failure, neglect, or refusal of another to arbitrate under a written agreement

for arbitration may petition any United States district court for an order directing that

such arbitration proceed in the manner provided for in such agreement. *Id.* at § 4.

Due to the strong public policy in favor of arbitration, the United States Supreme

Court has emphasized that questions of arbitrability "must be addressed with a

healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memorial*

IV.

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24-25.

It is of course now well-settled that agreements to arbitrate employment-related disputes are enforceable to the same broad extent as all other arbitration agreements. *See Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 123 (2001); *Leodori v. Cigna Corp.*, 175 N.J. 293, 302 (2003), *cert. denied*, 540 U.S. 938 (2003). Indeed, this Court routinely enforces mandatory employment arbitration agreements. *See e.g., Descafano v. BJ's Wholesale Club, Inc.*, 2016 WL 1718677 (D.N.J. Apr. 28, 2016); *Sabre Glbl, Inc. v. Shan*, 2016 WL 1365996 (D.N.J. Apr. 6, 2016); *Khazin v. TD Ameritrade Holding Corp.*, 2014 WL 940703 (D.N.J. March 11, 2014); *Morando v. NetWrix Corp.*, 2012 WL 1440229 (D.N.J. April 24, 2012).

In considering a motion to compel arbitration, a court must engage in a two-step analysis: it must first determine whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the scope of the agreement. *See Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009); *Salvadori v. Option One Mtg. Corp.*, 420 F. Supp. 2d 349, 356 (D.N.J. 2006); *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 94 (2002). The Third Circuit recently clarified that in making this determination, the Court should utilize the summary judgment standard when it is not apparent from the complaint that a party's claims

IV.

are subject to an enforceable arbitration clause. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013); *see also Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980).

Under the summary judgment standard, a court must compel arbitration if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. Accordingly, the Court must first determine whether there is a genuine issue of material fact as to whether a valid arbitration agreement exists. *Morando*, 2012 WL 1440229, at *2 (citing *Par-Knit Mills*). In making this determination, the Court must grant Plaintiff the benefit of all reasonable doubts and inferences that may arise. *Id.* Then, the Court must determine whether Plaintiff's claims falls within the scope of the arbitration agreement. *Id.* In examining whether certain claims fall within the ambit of an arbitration clause, a court must focus on the factual allegations in the complaint rather than the legal causes of action asserted. *Id.* If the court decides that the arbitration agreement is valid and the claims at issue fall within the scope of the arbitration clause, the court must then refer the dispute to arbitration without considering the merits of the case. *Id.*

Based on the foregoing, the Court must compel arbitration and dismiss the Complaint because there is no genuine dispute that: (1) Plaintiff received the Arbitration Agreement; (2) the Arbitration Agreement is a valid and enforceable

IV.

agreement; and (3) Plaintiff's claims fall within the scope of the agreement to arbitrate.

### B.    Plaintiff  Now Admits that he Received the Arbitration Agreement

For nearly three years, Plaintiff denied that he ever received a copy of the Arbitration Agreement, Opt Out Notice and Opt Out Form that CDS mailed to his home address in September 2018.  Then, in April 2023, Plaintiff advised this Court that he "discover[ed] [his] copy of CDS's Arbitration Agreement paperwork . . . which [he] previously thought [he] did not receive." [D.E. 92] By Plaintiff's own admission, there is no longer a genuine issue of material fact as to Plaintiff's receipt of the Arbitration Agreement.

### C.    The Arbitration Agreement Is Valid and Enforceable

Courts apply basic state contract principles to determine whether an agreement to arbitrate exists. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Leodori*, 175 N.J. at 302; *Martindale*, 173 N.J. at 86-88; *Caruso v. Ravenswood Developers*, 337 N.J. Super. 499, 504 (App. Div. 2001).  New Jersey law requires that, for an arbitration agreement to be enforceable in the employment context, it must clearly and unambiguously establish that an employee intended to waive the right to sue. *Sarbak v. Citigroup Global Markets, Inc.*, 354 F. Supp. 2d 531, 537 (D.N.J. 2004).  Additionally, the arbitration agreement must be supported by consideration. *Martindale*, 173 N.J. at 87-88.  Here, it is clear that Plaintiff clearly

13

and unambiguously agreed to arbitrate his claims and that the Arbitration Agreement was supported by sufficient consideration.

**1.** **Plaintiff Clearly and Unambiguously Agreed to Arbitrate All Claims Covered by The Arbitration Agreement**

An arbitration agreement must indicate to an employee that his or her federal and state judicial remedies are precluded forever and claims are resolved solely by arbitration. *Hemberger v. E*Trade Fin. Corp.*, 2007 WL 4166012, *3 (D.N.J. Nov. 19, 2007). A valid agreement to arbitrate employment disputes is binding on an employee who has knowingly waived the right to bring such disputes before a court and has clearly agreed to the terms of the arbitration agreement. *Id.* at *4. Under New Jersey law, an agreement to arbitrate, like any other contract, "must be the product of mutual assent, as determined under customary principles of contract law." *Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 442 (2014). "An effective waiver requires a party to have full knowledge of his legal rights and intent to surrender those rights." *Id.*

Here, it is undisputed that Plaintiff clearly and unambiguously agreed to arbitrate all claims against CDS that fell within the scope of the Arbitration Agreement. Indeed, the Opt-Out Notice cover document contains a specific "Question and Answer" which plainly addresses that by agreeing to be bound by the Arbitration Agreement, arbitration would be the sole and exclusive remedy for all

14

IV.

covered disputes and that the parties were waiving their right to proceed in court or to receive a trial by jury.  In pertinent part, the relevant provision states:

**What is the Agreement?**

> The Agreement provides that you and Damon mutually agree to resolve specified disputes through arbitration, rather than in court. By agreeing to resolve disputes through arbitration, you and Damon are giving up the right to a court or jury trial on claims covered by the Agreement.

(Romero Cert. at Exhibit A, p. 1).  In addition, the Agreement makes clear that "[u]nder this Agreement, **any Claims will be decided by an arbitrator rather than by a judge or jury**. Both you and the Company may seek to enforce this Agreement." (Romero Cert. at Exhibit B, ¶3). (emphasis added).

For a waiver to be valid, assent "*need not* be an actual signature, but must demonstrate a willingness and intent to be bound by the arbitration provision." *Schmell v. Morgan Stanley & Co.*, 2018 WL 1128502, at *2 (D.N.J. Mar. 1, 2018) (emphasis added). Indeed, the District of New Jersey has recognized that an arbitration agreement with an opt-out provision is a valid contract, and that a party's failure to opt out after receiving notice constitutes that party's acceptance of such arbitration agreement. *See Schmell,* 2018 WL 1128502 at *2 (compelling arbitration on the grounds that Plaintiff had notice of the agreement and his continued employment without opting out constituted assent to the Arbitration agreement); *see also Jayasundera v. Macy's Logistics & Operations, Department of Human*

IV.

*Resources*, 2015 WL 4623508, at *4 (D.N.J. Aug. 3, 2015) (holding that a "[f]ailure to opt out of an arbitration program after receiving notice is sufficient conduct to signify acceptance."); *Descafano v. BJ's Wholesale Club, Inc.*, 2016 WL 1718677, at *2 (holding that "[o]nce a party receives notice, acceptance of the arbitration program may be signified by failing to opt out."); *Uddin v. Sears, Roebuck & Co.*, 2014 WL 1310292, at *2 (D.N.J. Mar. 31, 2014) (granting a motion to compel arbitration where the employee acknowledged receipt of the arbitration agreement and chose not to opt out of the agreement within the 30 day deadline). Here, Plaintiff now admits that he received a copy of the Arbitration Agreement, Opt Out Notice and Opt Out Form that CDS mailed to his home address in September 2018. Plaintiff never opted out of the Arbitration Agreement and Plaintiff continued working for CDS for an additional six months until his termination of employment on May 1, 2019. (Romero Cert. at ¶¶10-11).

Furthermore, "[a]n offer may invite or require acceptance to be made by an affirmative answer in words, *or by performing or refraining from performing a specified act." Restatement Second of Contracts §30* (emphasis added). "To enforce a waiver-of rights provision in this setting, the Court requires some concrete manifestation of the employee's intent *as reflected in the text of the agreement itself." Leodori,* 814 A.2d at 1103 (emphasis in original). In *Jaworski*, for example, the concrete manifestation of intent, per the arbitration agreement itself, was

IV.

continued employment. *Jaworski*, 119 A.3d at 946 ("An Employee indicates his or her agreement to the Program and is bound by its terms and condition by beginning or continuing employment with [EY] after July 18, 2017 (the 'Effective Date.")); *see also Uddin v. Sears, Roebuck & Co.*, 2014 WL 1310292, at *2 (D.N.J. Mar. 31, 2014) (granting a motion to compel arbitration where the employee acknowledged receipt of the arbitration agreement and chose not to opt out of the agreement within the 30 day deadline). Here, too, the Opt Out Notice, Arbitration Agreement and Opt Out Form each separately advise Plaintiff that his continued employment signified his assent to the Arbitration Agreement. First, the "Notice Regarding Arbitration Agreement" section of the Opt Out Notice advised Plaintiff that:

> "[c]urrent associates will **automatically** be deemed to have consented to the Agreement if they continue their employment beyond October 26, 2018, unless they timely submit the enclosed "Arbitration Agreement Opt-Out Form" in the manner specified below. Therefore, it is important that you carefully read this notice and the enclosed documents."

(Romero Cert. at Exhibit A) (emphasis in original).

Second, the Arbitration Agreement itself states:

> "[i]f you continue to work for the Company or any affiliate after October 26, 2018, you will be bound by this Agreement unless you timely execute and return the Arbitration Agreement Opt-Out Form provided to you with this Agreement."

(Romero Cert. at Exhibit B).

Third, the Opt-Out Form emphasizes in capital letters that:

IV.

**CURRENT ASSOCIATES WILL AUTOMATICALLY BE DEEMED TO HAVE CONSENTED TO THE AGREEMENT IF THEY CONTINUE TO WORK FOR THE COMPANY PAST OCTOBER 26, 2018, UNLESS THEY SUBMIT THIS FORM BEFORE THAT DATE**.

(Romero Cert. at Exhibit C) (emphasis added).

Plaintiff clearly and unambiguously agreed to arbitrate his claims via the Arbitration Agreement.

## 2. <u>Plaintiff Received Sufficient Consideration to Support the Agreement to Arbitrate</u>

Nor can Plaintiff reasonably argue that the agreement to arbitrate in this matter was not supported by adequate consideration. Under New Jersey law, employment *or continued employment*, without more, constitutes adequate consideration to support an agreement to arbitrate. *See Bourgeois v. Nordstrom*, 2012 WL 42917at *3 (D.N.J. Jan. 9, 2012); *Hogan v. Bergen Brunswig Corp.*, 153 N.J. Super. 37, 43 (App. Div. 1977) (continuation of plaintiff's employment for approximately three years after she signed an employment contract was sufficient consideration). Plaintiff continued working for CDS for an additional six months following the expiration of the opt-out period, which is sufficient consideration to support the agreement to arbitrate.  Further, Defendant's agreement to submit to binding arbitration any covered claims *it may have against Plaintiff* also satisfies the consideration requirement. *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) ("When both parties have agreed to be bound by arbitration, adequate

18

IV.

consideration exists, and the arbitration agreement should be enforced."); *Horowitz v. AT&T Inc.*, 2019 WL 77306 at *9 (D.N.J. Jan 1, 2019) (granting motion to compel arbitration and holding that "consideration was also present in the Arbitration Agreement, since the agreement mutually obliges both parties to arbitrate all employment disputes and Plaintiffs have continued their employment with Defendants."). These facts compel the conclusion that Plaintiff received adequate consideration for agreeing to the terms of the Arbitration Agreement. Accordingly, the Arbitration Agreement is a valid agreement to arbitrate.

### D.    Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement

Because a valid and enforceable arbitration agreement exists, the Court must next consider whether Plaintiff's claims fall within the scope of the arbitration agreement. As noted above, the Complaint alleges statutory violations under the ADA and FMLA. [D.E. 1, Exhibit A]. With respect to Plaintiff's statutory claims, the New Jersey Supreme Court has explained the "scope" of an arbitration agreement as follows:

> The Court will not assume that employees intend to waive [statutory] rights unless their agreements so provide in unambiguous terms. That said, we do not suggest that a party need refer specifically to the [New Jersey Law Against Discrimination] or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights. To pass muster, however, a waiver-of-rights provision should at least provide that the employee agrees

IV.

> to arbitrate all statutory claims arising out of the
> employment relationship or its termination.

*Garfinkel v. Morristown Obstetrics & Gynecology Associates, P.A.*, 168 N.J. 124,
135 (2001).

Courts routinely find statutory to claims fall within the scope of an arbitration agreement, even where the agreement does not reference the particular statute pursuant to which the claims are brought. *See, e.g.*, *Martindale*, 173 N.J. at 95 (holding that an employment application containing an agreement to arbitrate claims arising out of employment was valid and applicable to statutory employment claims even though the agreement did not explicitly reference the particular statutes at issue). That is, an arbitration agreement waiving statutory rights need not identify the specific statutes by name. Indeed, in *Martindale*, for example, the arbitration agreement provided only: "I agree that all disputes relating to my employment with [the company] or termination thereof shall be decided by an arbitrator." 173 N.J. at 81-82. Even so, the Court held that the arbitration agreement "not only was clear and unambiguous, it was also sufficiently broad to encompass reasonably plaintiff's statutory causes of action." *Id.* at 96.

Here, there can be no question that the Arbitration Agreement encompasses the claims asserted by Plaintiff in this action. In fact, the Arbitration Agreement specifically references claims arising under the ADA and other federal employment

IV.

laws.  The Arbitration Agreement provides, in relevant part, in no uncertain terms, that:

> For purposes of this Agreement, Claims include, but are not limited to, all statutory, contractual and/or common law claims, including but not limited to claims arising under . . . the Americans with Disabilities Act; and other federal, state and local employment laws.

(Romero Cert. at Exhibit B).

Clearly, Plaintiff's statutory claims for violations of the ADA and FMLA fall within the scope of the arbitration agreement. *Id.*  Because all of Plaintiff's claims fall within the scope of a valid and enforceable arbitration agreement, the Court must compel arbitration and dismiss the Complaint in its entirety.

## POINT II

## THE COURT MUST DISMISS THE COMPLAINT AND COMPEL ARBITRATION

The FAA authorizes the Court to stay a civil action when compelling arbitration. 9 U.S.C. §§ 3 and 4.  However, where all of the issues raised in the civil action are subject to compulsory arbitration, the proceeding should be dismissed rather than stayed.  *Seus v. John Nuveen & Co., Inc.,* 146 F.3d 175, 178 (3d Cir. 1998), *cert. denied*, 525 U.S. 1139 (1999); *Dancu v. Coopers & Lybrand*, 778 F. Supp. 832, 835 (E.D. Pa. 1991), *aff'd,* 972 F.2d 1330 (3d Cir. 1992) (dismissing case because, "Plaintiff has alleged two claims, both of which are subject to arbitration under the FAA. Retaining jurisdiction would serve no purpose as both claims will

IV.

be determined in the arbitration").  Accordingly, the Court here should dismiss, not merely stay, the civil action.

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendant respectfully requests that the Court require Plaintiff to fulfill his contractual obligations by compelling arbitration and dismissing the Complaint with prejudice.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
*Attorneys for Defendant*
*Club Demonstration Services, Inc.*

*Jocelyn A. Merced_____*
Jocelyn A. Merced

Dated: August 25, 2023

22

IV.    58028691.v1-OGLETREE