<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRIAN L. TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>CDS ADVANTAGE SOLUTIONS, *et al.*,<br><br>Defendants. | Case No. 2:20-cv-02803 (BRM) (MAH)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Club Demonstration Services, Inc.'s ("CDS"[1]) renewed Motion to Compel Arbitration and Motion to Dismiss *pro se* Plaintiff Brian Taylor's ("Taylor") Complaint (ECF No. 1), pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") (ECF No. 112). Taylor filed an opposition (ECF No. 126), and CDS filed a reply (ECF No. 129). Also before the Court is Taylor's Cross-Motion for Summary Judgment[2] (ECF No. 127), which CDS opposed (ECF No. 129). As of the date of this Opinion, Taylor has not filed a reply. Having reviewed the submissions filed in connection with the two motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, CDS's renewed Motion to Compel Arbitration (ECF No. 112) is **GRANTED**, Taylor's Complaint (ECF No. 1) is **DISMISSED WITHOUT**

---

[1] Counsel for CDS notes CDS was improperly named as "CDS Advantage Solutions" in the Complaint but is correctly identified as "Club Demonstration Services, Inc." (*See* ECF No. 1 at 2.)

[2] In both his opposition to CDS's Motion to Compel Arbitration and his Cross-Motion for Summary Judgment, Taylor appears to also request leave to amend the Complaint to add a claim for negligence. (*See* ECF No. 126 at 43; ECF No. 127 at 43.)

**PREJUDICE**, Taylor's Cross-Motion for Summary Judgment (ECF No. 127) is **DENIED AS MOOT**, and Taylor's request for leave to amend the Complaint (*see* ECF No. 126 at 43; ECF No. 127 at 43) is **DENIED AS MOOT**.

## I.   BACKGROUND

For the purposes of this motion to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Taylor. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court may also consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This action involves alleged employment discrimination in violation of the Family and Medical Leave Act, 29 U.S.C. § 2611 *et seq.* ("FMLA") and the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq.* ("ADA"). (*See generally* ECF No. 1.) Taylor is a former employee of CDS. (*See* ECF No. 1 at 10–11.) "CDS is an in-house event marketing provider for Costco Wholesale Corporation" and is a wholly owned subsidiary of Daymon Worldwide, Inc. ("Daymon"). (ECF No. 112 at 3.) Taylor states he has a disability and alleges he suffered disparate treatment and harassment from Marc Sullivan,[3] his manager at CDS, which he alleges constitutes discrimination in violation of the FMLA and the ADA. (ECF No. 1 at 10–11.) As a result of this discrimination and his subsequent termination from CDS, Taylor claims he suffered a severe relapse in his undisclosed symptoms. (*Id.*)

On or about September 6, 2019, Taylor filed a Complaint in the Superior Court of New

---

[3] It does not appear Plaintiff has served Defendant Marc Sullivan to date, and Marc Sullivan has not yet appeared in this case.

Jersey, Essex County, Law Division, Civil Part, captioned *Brian L. Taylor a.k.a. Bras Dobane v. Marc Sullivan (CDS/Advantage Solutions)*, Docket No. L-6989-19 (the "State Court Action"), alleging employment discrimination in violation of the FMLA and the ADA. (*Id.*) On March 13, 2020, CDS filed a Notice of Removal, removing the State Court Action to this Court on the basis of federal question jurisdiction. (ECF No. 1.) CDS asserts the Notice of Removal was timely filed within thirty days of service, which occurred on February 26, 2020 via certified mail. (*Id.* at 2−3.) On May 18, 2020, CDS filed an Answer denying the allegations in Taylor's Complaint and asserting affirmative and other defenses (ECF No. 5) including a defense stating Taylor's "claims in the Complaint, or some of them, are subject to binding arbitration pursuant to an arbitration agreement" (*id.* at 3). Approximately four months later, on September 25, 2020, CDS filed its initial motion to compel arbitration and dismiss the complaint pursuant to Rule 12(b)(6), arguing Taylor was required to arbitrate his claims because he never opted out of an arbitration program that CDS's parent company Daymon expanded to cover all employees, including Taylor. (ECF No. 15.) Taylor filed an opposition (ECF No. 16), and CDS filed a reply (ECF No. 19). On April 30, 2021, the Honorable John Michael Vazquez, U.S.D.J. (ret.) denied CDS's initial motion to compel arbitration without prejudice because he found there was a genuine dispute of material fact as to whether Taylor received the arbitration agreement. (ECF Nos. 32, 33.) Judge Vazquez noted Taylor stated he had never seen the arbitration agreement that CDS mailed to him and found this was sufficient to defeat the presumption of receipt under the common law mailbox rule.[4] (ECF No.

---

[4] Under the common law mailbox rule, "if a letter properly directed is proved to have been either put into the post-office or delivered to the postman, it is presumed . . . that it reached its destination at the regular time, and was received by the person to whom it was addressed." *Guerra v. Consol. Rail Corp.*, 936 F.3d 124, 136 (3d Cir. 2019) (alteration in original) (quoting *Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 319 (3d Cir. 2014)).

32 at 6–7.) On May 28, 2021, CDS filed a Notice of Appeal of Judge Vazquez's decision (ECF No. 36), and subsequently filed a motion to stay this action pending the appeal (ECF No. 38). Taylor opposed the motion to stay (ECF No. 46), and CDS filed a reply in further support of its motion to stay (ECF No. 49). On September 8, 2021, Judge Vazquez granted CDS's motion to stay pending appeal. (ECF No. 52.)

Approximately nineteen months later, in a letter dated April 19, 2023, Taylor advised the Court that he "discover[ed] [his] copy of CDS's Arbitration Agreement paperwork as sent to [him] back in the fall of 2018, which [he] previously thought [he] did not receive"; and he attached a copy of the recently rediscovered documents. (ECF Nos. 92, 92-1.) On June 14, 2023, the U.S. Court of Appeals for the Third Circuit ("Third Circuit") dismissed the pending appeal in this action pursuant to a voluntary dismissal under Federal Rule of Appellate Procedure 42(b). (ECF No. 99.) On June 30, 2023, CDS submitted a letter to the Court requesting: (1) in light of the Third Circuit's dismissal, the Court lift the stay pending appeal, and (2) permission to renew its motion to compel and dismiss based on the new evidence from Taylor. (ECF No. 102.) In a Text Order, the Court granted CDS's request to lift the stay and permitted CDS to file a renewed motion to compel by or before August 25, 2023.[5] (ECF No. 104.)

On August 25, 2023, CDS filed a renewed Motion to Compel Arbitration and Motion to Dismiss Taylor's Complaint pursuant to Rule 12(b)(6). (ECF No. 112.) Following multiple

---

[5] Prior to the Court issuing this Text Order, Taylor filed a motion to adjourn this action (and two other cases) indefinitely, noting that he and his sole proprietorship "ha[ve] been the victim of Illegal Surveillance operations" and that he wanted to investigate the source of this. (*See* ECF No. 100.) CDS opposed this motion. (ECF No. 103.) On July 13, 2023, Judge Vazquez denied Taylor's motion to adjourn, finding "[Taylor's] belief that an unknown entity is illegally surveilling him and/or his business, and [his] desire to investigate the source of the alleged surveillance operations, are not sufficient bases to adjourn the [referenced] matters, which [he] initiated[.]" (ECF No. 106 at 2.)

requests for extensions, Taylor filed an opposition on January 16, 2024. (ECF No. 126.) The next day, Taylor filed a Cross-Motion for Summary Judgment. (ECF No. 127.) On January 25, 2024, CDS filed a reply in further support of its Motion and in opposition to Taylor's Cross-Motion. (ECF No. 129.) As of the date of this Opinion, Taylor has not filed a reply in further support of his Cross-Motion.

On September 14, 2023, this action was reassigned to the undersigned from Judge Vazquez. (ECF No. 113.)

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, "establishes a policy in favor of arbitration that requires the liberal reading of arbitration agreements and the resolution of any doubts in favor of arbitration." *S. Broward Hosp. Dist. v. Medquist, Inc.*, 258 F. App'x 466, 467 (3d Cir. 2007) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, (1983)). The FAA provides: "[a] written provision . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. "Decades ago, the Supreme Court discussed 9 U.S.C. § 2 as 'a congressional declaration of a liberal federal policy favoring arbitration agreements.'" *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 338 (3d Cir. 2023) (quoting *Moses*, 460 U.S. at 24). More recently, though, the Supreme Court explained that "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (quoting *Moses*, 460 U.S. at 24). Rather, this policy "is to make 'arbitration agreements as enforceable as other contracts, but not more so.'" *Morgan*, 596 U.S. at 418 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg.*

*Co.*, 388 U.S. 395, 404 n.12 (1967)). "Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind." *Morgan*, 596 U.S. at 418.

"[Q]uestions of arbitrability, including challenges to an arbitration agreement's validity, are presumed to be questions for judicial determination." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citation omitted). "In considering a motion to compel arbitration, a court must engage in a two-step analysis: it must determine first whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the scope of said agreement." *Thomas v. Jenny Craig, Inc.*, Civ. A. No. 10-02287, 2010 WL 3076861, at * 3 (D.N.J. Aug. 4, 2010) (first citing *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009), and then citing *Salvadori v. Option One Mortg. Corp.*, 420 F. Supp. 2d 349, 356 (D.N.J. 2006)). "State contract principles apply in ascertaining whether the parties to an action have agreed to arbitrate." *Sarbak v. Citigroup Glob. Mkts., Inc.*, 354 F. Supp. 2d 531, 537 (D.N.J. 2004) (first citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), and then citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)). "Under New Jersey law, '[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law.'" *Levy v. AT&T Servs., Inc.*, Civ. A. No. 21-11758, 2022 WL 844440, at *3 (D.N.J. Mar. 22, 2022) (alteration in original) (quoting *James v. Glob. TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017)). "Therefore, 'if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract.'" *Id.* (quoting *Crawford v. Compass Grp. USA*, Civ. A. No. 14-02545, 2015 WL 1006389, at *3 (D.N.J. Mar. 6, 2015)). "To manifest assent, 'an offeree must provide 'unqualified acceptance,' which can be express or implied by conduct.'" *Id.* (quoting *Glob. TelLink Corp*, 852 F.3d at 265). For example, where employees are properly notified of an arbitration agreement and that they

would assent through inaction unless they filled out an opt-out form, "failure to opt out of the arbitration through inaction [is] a proper method to assent." *Id.* at *4 (citing cases).

"In examining whether certain claims fall within the ambit of an arbitration clause, a court must 'focus . . . on the "factual allegations in the complaint rather than the legal causes of action asserted."'" *Jayasundera v. Macy's Logistics & Operations, Dep't of Human Res.*, Civ. A. No. 14-07455, 2015 WL 4623508, at *2 (D.N.J. Aug. 3, 2015) (alteration in original) (quoting *Mut. Benefit Life Ins. Co. v. Zimmerman*, 783 F. Supp. 853, 869 (D.N.J. 1992), *aff'd*, 970 F.2d 899 (3d Cir. 1992)). If the court determines that the claims in dispute fall within the scope of the arbitration agreement, the court "must then refer the dispute to arbitration without considering the merits of the case." *Id.*

"Where arbitrability is apparent on the face of the complaint, a Rule 12(b)(6) standard of review should be applied to the motion to compel arbitration." *Sauberman v. Avis Rent a Car Sys., L.L.C.*, Civ. A. No. 17-00756, 2017 WL 2312359, at *2 (D.N.J. May 26, 2017) (citing *Guidotti*, 716 F.3d at 774). However, the "Rule 12(b)(6) standard is inappropriate when either 'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate" or when "the opposing party has come forth with reliable evidence that is more than a 'naked assertion . . . that it did not intend to be bound' by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Guidotti*, 716 F.3d at 774 (alteration in original) (citations omitted). Rather, courts should use the Federal Rule of Civil Procedure 56 ("Rule 56") summary judgment standard. *Guidotti*, 716 F.3d at 774. "Therefore, a court must first determine whether there is a genuine issue of material fact as to whether a valid arbitration agreement exists." *Jayasundera*, 2015 WL 4623508, at *2. In making this determination, the party opposing arbitration receives "the benefit of all reasonable

doubts and inferences that may arise." *Id.*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" (*Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

### III.   DECISION

#### A.   CDS's Renewed Motion to Compel Arbitration and Dismiss Taylor's Complaint

CDS argues it mailed Taylor its Mutual Agreement to Arbitrate Claims ("Arbitration Agreement") on or about September 14, 2018, along with materials describing its arbitration program and notifying him "that, if he failed to affirmatively 'opt out' of the arbitration program, he would be deemed to have agreed that all disputes with CDS would be resolved exclusively in

arbitration." (ECF No. 112-1 at 1, 4; *see also* ECF No. 112-2 at Ex. B.) CDS contends Taylor

received the Arbitration Agreement, which Taylor confirmed in writing to the Court, and was

provided the opportunity to opt out but failed to do so, either prior to the opt-out deadline of

October 26, 2018, or subsequently thereafter. (*Id.* at 4, 7, 14–18.)

CDS asserts the Arbitration Agreement and the accompanying Opt-Out Notice and Opt-

Out Form: (1) each provided clear instructions for how to opt out of the agreement, with some of

the opt-out language in bolded text and/or text in all capital letters, and separately (2) each

"advise[d] [Taylor] that his continued employment signified his assent to the Arbitration

Agreement." (*Id.* at 5–8.) The Arbitration Agreement provides in relevant part as follows:

> [E]xcept as otherwise provided in this Mutual Agreement to
> Arbitrate Claims ("Agreement"), you and Daymen Worldwide Inc.
> (hereinafter, the "Company") agree to resolve in binding arbitration
> all claims or controversies ("Claims") that the Company may have
> against you, or that you (and no other party) may have against any
> of the following: (1) the Company, (2) its officers, directors,
> employees or agents in their capacity as such or otherwise,
> [etc.] . . . .
>
> For purposes of this Agreement, Claims include, but are not limited
> to, all statutory, contractual and/or common law claims including,
> but not limited to, claims arising under . . . the Americans with
> Disabilities Act; and other federal, state and local employment laws.
>
> If you continue to work for the Company or any affiliate after
> October 26, 2018, you will be bound by this Agreement unless you
> timely execute and return the Arbitration Agreement Opt-Out Form
> provided to you with this Agreement. Under this Agreement, any
> Claims will be decided by an arbitrator rather than by a judge or
> jury. . . .
>
> Company and you promise to resolve Claims by arbitration as
> presented in this Agreement. These mutual promises are
> consideration for each other.

(ECF No. 112-2 at Ex. B.) The Opt-Out Notice for the Arbitration Agreement similarly provides

the following, including stating in bolded text that if the recipients did not want to be bound by the

Arbitration Agreement, they had to sign and return the Opt-Out Form by October 26, 2018:

> Please carefully review the Mutual Agreement to Arbitrate Claims included in this mailing. The Agreement is voluntary. However, current associates will **automatically** be deemed to have consented to the Agreement if they continue their employment beyond OCTOBER 26, 2018, unless they timely submit the enclosed "Arbitration Agreement Opt-Out Form" in the manner specified below. Therefore, it is important that you carefully read this notice and the enclosed documents. . . .
>
> **If you do not want the Agreement to apply to you, then you must complete the enclosed Arbitration Agreement Opt-Out Form and send a signed copy via e-mail to arbitrationoptout@daymon.com pursuant to the instructions on the form no later than OCTOBER 26, 2018.**
>
> If you do not e-mail or mail a completed Opt-Out Form by OCTOBER 26, 2018, and you continue to work for the company after that date, you will be required to resolve disputes that you may have with Daymon or any affiliate through arbitration (and vice versa), in accordance with the terms of the attached Agreement. . . .
>
> Daymon will not retaliate against anyone who submits an Opt-Out Form. . . . If you have questions about the attached Agreement and/or the Opt-Out Form, you may contact HR at (800) 573-8861. You may also discuss the decision of whether to accept the Agreement or submit an Opt-Out Form with private legal counsel if you wish to do so.

(ECF No. 112-2 at Ex. A.) The Arbitration Agreement Opt-Out Form likewise states in all capital

letters:

> IF YOU DO NOT WANT THE MUTUAL AGREEMENT TO ARBITRATE CLAIMS SENT WITH THIS FORM TO APPLY TO YOU, THEN YOU MUST COMPLETE THIS FORM AND RETURN IT BY ONE OF THE FOLLOWING METHODS NO LATER THAN 11:59 PM PACIFIC STANDARD TIME ON OCTOBER 26, 2018:
> - EMAIL A SCANNED COPY TO arbitrationoptout@daymon.com.

- BY MAIL TO DAYMON ATTN: LEGAL DEPARTMENT 18100 VON KARMAN AVENUE, SUITE 1000, IRVINE, CA 92612

  CURRENT ASSOCIATES WILL AUTOMATICALLY BE DEEMED TO HAVE CONSENTED TO THE AGREEMENT IF THEY CONTINUE TO WORK FOR THE COMPANY PAST OCTOBER 26, 2018, UNLESS THEY SUBMIT THIS FORM BEFORE THAT DATE. IF YOU NEED ASSISTANCE, PLEASE CONTACT YOUR HR REPRESENTATIVE, WHO CAN ASSIST YOU WITH SUBMITTING THIS FORM.

(ECF No. 112-2 at Ex. C.)

CDS states each of these documents notified Taylor of the Arbitration Agreement and his ability to opt out and provided that his continued employment with CDS would indicate his assent to the Arbitration Agreement, absent his timely opt-out. (ECF No. 112-1 at 6.) Therefore, CDS argues Taylor is bound by the Arbitration Agreement's terms because he never opted out of the agreement and continued to work for CDS until his employment was terminated on May 1, 2019. (*Id.* at 7.) CDS also contends Taylor's claims in this action—alleged violations of the FMLA and the ADA—fall squarely within the Arbitration Agreement's scope. (*Id.* at 19–21.) Accordingly, CDS submits the Court must compel arbitration and dismiss the Complaint because it is undisputed that Taylor received the Arbitration Agreement, which is valid and enforceable, and the Arbitration Agreement's scope covers Taylor's claims. (*Id.* at 12–13.)

CDS further argues that Taylor "fails to identify any legitimate basis on which to deny enforcement of the Arbitration Agreement" and that his "argument that he should not be bound by the Arbitration Agreement because he failed to read it when he first received it in the mail has no basis in law and should be rejected." (ECF No. 129 at 1.) Lastly, CDS contends it has not waived its right to compel arbitration and has not engaged in any conduct showing an intent to waive its right to arbitrate. (*Id.* at 1–4.) Rather, CDS asserts it has "acted consistently and expressed an intent

to assert its right to arbitrate" and "has not engaged in any litigation with [Taylor], other than to try to enforce the Arbitration Agreement." (*Id.* at 1, 3.)

In opposition, Taylor concedes he received the Arbitration Agreement back in 2018 but argues he did not see or read the agreement before the opt-out deadline of October 26, 2018 because of numerous unrelated challenges he faced around that time.[6] (ECF No. 126 at 1, 8–10.) While not clear from his opposition, Taylor also appears to be arguing his claims do not fall within the Arbitration Agreement's scope. (*See id.* at 2 ("[Taylor] only chose to file his complaint against [CDS] as the result of events arising from his subsequent Unemployment Insurance claim, or a matter not covered by the agreement as stated within the heart of the documents. Once again, this makes said agreement unenforceable.").) Taylor states he "would have retained no reluctance toward responding to [CDS's] September 2018 Arbitration Agreement notice, had he actually had the chance to receive and review such prior to its deadline date of 10/26/18[.]" (*Id.* at 1.)

Taylor also appears to argue that CDS waived its right to compel arbitration by not filing its Motion sooner and by participating in Taylor's unemployment proceedings. (*See id.* at 17–24; *e.g.*, *id.* at 20–21 ("[S]ince [CDS] had knowledge of both the [arbitration] agreement and complaint, why then did it not (once Counsel had been attained) come out of its corner swinging from the beginning--with this kind of knowledge in mind? Yet in reality, it chose not to. . . . Subsequently, this begs the question, why had [CDS] not [sought arbitration] immediately following their removal, which had been still ahead of its answer.").)

---

[6] For example, Taylor states in 2017 (prior to receiving the Arbitration Agreement in or around September 2018), he was suffering bereavement following the death of his mother; was hospitalized following his mother's funeral; filed a restraining order against his father; moved a total of three times between September 2017 and February 2018; was undergoing treatment with the Program for Assertive Community Treatment Team of Essex County; and had issues with "delayed or missed mailings." (ECF No. 126 at 9–11.)

Here, the Court first determines that the Rule 56 summary judgment standard applies in deciding CDS's Motion to Compel Arbitration because Taylor's Complaint does not mention the Arbitration Agreement. (*See* ECF No. 1.) The Court therefore analyses CDS's Motion utilizing that standard. Taylor initially maintained he never saw or received the Arbitration Agreement, but later notified the Court that he did in fact receive the Arbitration Agreement back in 2018. (*See* ECF No. 16; ECF No. 92; ECF No. 126 at 1, 8–9.) The Court appreciates Taylor's candor in notifying the Court about this. Based on this new evidence, the Court finds the Arbitration Agreement is valid and enforceable.

Taylor argues he could not have agreed to the Arbitration Agreement because he did not read or review this agreement back in 2018, but this is not sufficient to refute acceptance of an arbitration agreement. "Failure to opt out of an arbitration program after receiving notice is sufficient conduct to signify acceptance." *Jayasundera*, 2015 WL 4623508, at *4; *see also Horowitz v. AT&T Inc.*, Civ. A. No. 17-04827, 2019 WL 77331, at *8 (D.N.J. Jan. 2, 2019) (citing cases). In *Levy v. AT&T Services, Inc.*, the court granted defendant's motion to compel arbitration because it found plaintiff assented to the terms of the arbitration agreement where plaintiff was properly notified of the arbitration agreement by email and "fail[ed] to opt out of the [a]greement by the prescribed date in the notification emails." *Levy*, 2022 WL 844440, at *4–6. The plaintiff in *Levy* did not dispute that (1) his employer offered the arbitration agreement in a valid manner, (2) the agreement's terms provided sufficient consideration, or (3) should the agreement be found to be valid and enforceable, his claims fell within the agreement's scope. *Id.* at *3. Rather, the plaintiff's sole argument was "that his failure to complete the opt-out form did not manifest an unmistakable intention, and thereby his assent, to enter into the [a]rbitration [a]greement, and thus, he is not subject to its terms." *Id.* The plaintiff in *Levy* further argued "inaction is insufficient to

assent to an arbitration agreement" and "because he neither signed or submitted any electronic acknowledgment that he had reviewed or understood the [a]greement, nor affirmatively clicked 'yes' on a webpage indicating that he intended to enter the [a]greement, he never actually assented to the [a]greement." *Id.* However, the *Levy* court did not find plaintiff's arguments persuasive and, consistent with other courts in this District, concluded that contrary to plaintiff's position, "so long as the employee is notified of the offer, failure to opt out of the arbitration through inaction was a proper method to assent." *Id.* at *4.

Likewise, in *Horowitz v. AT&T Inc.*, the court granted defendants' motion to compel arbitration where it found "[p]laintiffs accepted the terms of the [a]rbitration [a]greement by receiving notice of the agreement, clicking on the link, and failing to opt out within the deadline" and where plaintiffs did not dispute the arbitration agreement's scope or that they received the arbitration agreement. *Horowitz*, 2019 WL 77331, at *4–5, *9. The *Horowitz* court also noted that consideration was present in the arbitration agreement because "the agreement mutually oblige[d] both parties to arbitrate all employment disputes and [p]laintiffs have continued their employment with [d]efendants." *Id.* (citation omitted). *See also Jayasundera*, 2015 WL 4623508, at *4–5 (granting defendant's motion to compel arbitration, finding plaintiff accepted terms of the arbitration agreement by signing acknowledgment of receipt of the agreement and failing to return the opt-out form within the prescribed 30-day period); *Uddin v. Sears, Roebuck & Co.*, Civ. A. No. 13-06504, 2014 WL 1310292, at *2–3, *5–6, *9 (D.N.J. Mar. 31, 2014) (granting motion to compel arbitration, finding the employee acknowledged receipt of the arbitration agreement and assented to the agreement's terms by failing to opt out within the prescribed 30-day period, noting "[i]t was [p]laintiff's obligation to ensure that he understood the implications of the [a]greement" and that "[i]n the absence of 'fraud, deceit, or misrepresentation,' the [p]laintiff is presumed to

have understood and assented to the terms of the [a]greement" (quoting *Stelltui v. Casapenn Enterprises, LLC*, 1 A.3d 678, 690 (N.J. 2010))).

Further, not reading or reviewing a contract upon receipt is not a defense to enforcing that contract. *See Tedeschi v. D.N. DeSimone Constr., Inc.*, Civ. A. No. 15-08484, 2017 WL 1837853, at *4 (D.N.J. May 8, 2017) ("Failing to read a contract [] provides no defense to an agreement's binding terms." (citations omitted)); *Glob. One Fin., Inc. v. Foot & Ankle Inst. of N. Jersey, PA*, Civ. A. No. 06-01226, 2008 WL 540849, at *3 (D.N.J. Feb. 25, 2008) ("This court recognizes that 'in the absence of fraud [or duress], one who does not choose to read a contract before signing it cannot later relieve himself of its burdens.'" (alteration in original) (quoting *Moreira Constr. Co. v. Moretrench Corp.*, 235 A.2d 211, 213 (N.J. Super. Ct. App. Div. 1967), *aff'd sub nom.*, 241 A.2d 236 (N.J. 1968)); *McMurray v. AT&T Mobility Servs., LLC*, Civ. A. No. 21-00414, 2021 WL 3293540, at *5 (D. Minn. Aug. 2, 2021) ("The Court also observes that insofar as [plaintiff] argues that the [a]rbitration [a]greement is invalid because he did not understand what arbitration meant, a failure to read or understand a contract before accepting it does not bar enforcement. . . . Moreover, the record reflects that both the [e]mail and [a]rbitration [a]greement explained the concept of arbitration in plain, understandable terms, and advised that any further questions could be directed to the [] Employee Service Hotline before the deadline to opt out. . . . Thus, even if failure to understand a contract was a defense to enforcement, [plaintiff] had over 60 days to inquire about the meaning of arbitration and had the option to opt out if he did not want to be bound by something he did not understand." (citations omitted)).

The Court concludes a valid arbitration agreement exists between CDS and Taylor because Taylor admits he received the Arbitration Agreement back in 2018, which notified him that if he did not opt out by October 26, 2018, he would be deemed to have assented to the Agreement. At

that time, Taylor had the opportunity to read and review the Arbitration Agreement and the accompanying Opt-Out Notice and Opt-Out Form. Taylor's argument that he did not read or review the Arbitration Agreement before the opt-out date is not sufficient to show he did not assent to the Agreement. *See Tedeschi*, 2017 WL 1837853, at *4; *Glob. One Fin., Inc.*, 2008 WL 540849, at *3; *McMurray*, 2021 WL 3293540, at *5. As with the cases discussed above, here Taylor no longer disputes he received, and accordingly was notified of, the Arbitration Agreement back in 2018; he does not argue fraud or duress in connection with the Arbitration Agreement or that CDS hid the Arbitration Agreement clause or any other similar facts that might show or suggest the Arbitration Agreement is invalid or unenforceable.[7] *See Levy*, 2022 WL 844440, at *4 ("[S]o long as the employee is notified of the offer, failure to opt out of the arbitration through inaction was a proper method to assent."). Sufficient consideration was also present because, in exchange for Taylor's agreement to arbitrate all claims covered by the Arbitration Agreement, he received continued employment with CDS and CDS's agreement to arbitrate any claims it may have against Taylor. *See Horowitz*, 2019 WL 77331, at *9.

Accordingly, the Court concludes there is no genuine issue of material fact as to whether a valid arbitration agreement exists and finds Taylor assented to the Arbitration Agreement by

---

[7] Taylor states he had to take a Food Safety Exam on October 26, 2018 (the same day as the opt-out deadline for the Arbitration Agreement), which exam he says was required to remain employed at CDS, and he argues CDS's "own acts of negligence if anything, did more to cement the impossibility of [the Arbitration Agreement's] enforcement than anything as, among other reasons, its deadline (either purposefully, if not serendipitously) did coincide with the company's 10/26/19 [*sic*] (F) Food Safety Exam deadline as well, which caused even more confusion." (ECF No. 126 at 3, 7; *see also id.* at 12–14.) It is not clear to the Court what specifically Taylor is attempting to argue here, but to the extent he is arguing that the required Food Safety Exam deadline was purposefully scheduled to be on the same day as the opt-out deadline for the Arbitration Agreement, this is not a valid or sufficient reason to prevent enforcement of the Arbitration Agreement. For example, Taylor is not arguing that he asked for an extension of the opt-out deadline because of this coinciding exam deadline and CDS refused that request.

receiving it and failing to opt out by the prescribed deadline of October 26, 2018. *See Jayasundera*, 2015 WL 4623508, at *3–4. Therefore, the Court finds the Arbitration Agreement is valid and enforceable. The Court also finds Taylor's alleged violations of the FMLA and ADA fall within the scope of the Arbitration Agreement because the Agreement explicitly covers "all statutory, contractual and/or common law claims including, but not limited to, claims arising under . . . the Americans with Disabilities Act; and other federal, state and local employment laws." (ECF No. 112-2 at Ex. B.)

Further, the Court finds CDS has not waived its right to compel arbitration or its right to arbitrate this dispute. Taylor appears to argue CDS waived its right to arbitrate by not filing its Motion sooner and by participating in Taylor's unemployment proceedings (*see* ECF No. 126 at 17–24), but neither of these arguments constitutes waiver on the facts of this case. "In the Third Circuit, the presumption is that courts, not arbitrators, should decide whether a party has waived its right to arbitrate by engaging in litigation conduct." *Smith v. Experian Info. Sols., Inc.*, Civ. A. No. 22-06471, 2023 WL 6057377, at *4 (D.N.J. Sept. 14, 2023) (citing *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 218–19 (3d Cir. 2007)). "[T]he inquiry for waiver of arbitration rights must be identical to the inquiry for waiver of other contractual rights." *White*, 61 F.4th at 339 (citations omitted). "[W]hen a contract contains a waiver of rights—whether in an arbitration or other clause—the waiver must be clearly and unmistakably established." *Tedeschi*, 2017 WL 1837853, at *3 (alteration in original) (quoting *Morgan v. Sanford Brown Inst.*, 137 A.3d 1168, 1180 (N.J. 2016)).

For example, in *Morgan v. Sundance, Inc.*, the court found defendant waived its right to arbitration where it (1) "initially defended itself against [plaintiff's] suit as if no arbitration agreement existed"; (2) "moved to dismiss the suit as duplicative of a collective action previously

brought by other [similarly situated plaintiffs]"; (3) answered the plaintiff's complaint and asserted fourteen affirmative defenses, none of which mentioned the arbitration agreement; and (4) waited "nearly eight months after the suit's filing" to move to stay the litigation and compel arbitration. *Sundance, Inc.*, 596 U.S. at 414–15. Similarly, in *White v. Samsung Electronics America, Inc.*, the court affirmed the district court's holding that defendant waived its right to arbitrate, noting defendant continually "pursue[d] dismissal on the merits through litigation" and failed to notify the court or the plaintiffs of its right to arbitrate until approximately eighteen months after the second amended complaint was filed, which actions the court found were "inconsistent with an intent to arbitrate." *White*, 61 F.4th at 337–38, 340–41. *See also Coronel v. Bank of Am., N.A.*, Civ. A. No. 19-08492, 2022 WL 3443985, at *5 (D.N.J. Aug. 17, 2022) (concluding defendant waived its right to compel arbitration where it (1) "did not assert an arbitration defense in either its original answer or amended answer"; (2) participated in discovery; and (3) despite being reasonably aware of its right to move to compel arbitration in December 2019, waited until June 2021 to file a motion to compel arbitration, without excuse, which the court found was "egregiously untimely"—eighteen months past the court-ordered deadline to do so).

In contrast, the parties here have not engaged in substantive motion practice outside of CDS's Motion to Compel Arbitration and, to the Court's knowledge, have not engaged in any discovery to date. Additionally, CDS has not intentionally waived its right to arbitrate. While the Court acknowledges CDS first filed an Answer as its responsive pleading and subsequently filed its initial motion to compel arbitration a few months later, CDS asserted binding arbitration in one of its defenses in its Answer (*see* ECF No. 5 at 3) and since then has continually sought to compel arbitration and expressed its intent to assert its right to arbitrate. The brief gap between CDS filing its Answer and its Motion to Compel was not so untimely that it constituted waiver of its right to

arbitrate. Unlike the defendants in the *Morgan*, *White*, and *Coronel* cases, CDS has not engaged in any conduct that the Court finds constitutes waiver of its right to compel arbitration. Rather, this case is more closely aligned with other cases where courts have found defendants did *not* waive their right to compel arbitration. *See, e.g.*, *Woodham v. Morgan Stanley*, Civ. A. No. 23-02080, 2023 WL 7151191, at *6 (D.N.J. Oct. 31, 2023) (granting defendants' motion to compel arbitration, finding defendants did not waive right to compel arbitration where they filed a motion to compel arbitration within one month of receiving the summons and where that motion was the first motion they filed); *Smith*, 2023 WL 6057377, at *5 (granting defendant's motion to compel arbitration, finding defendant did not waive nor intentionally relinquish its right to arbitrate even though "[d]efendant filed an answer, attended two conferences, and engaged in the early stages of pre-trial discovery[,]" noting these were "all early-stage activities that took place within four months of [p]laintiff initiating the action" and "[i]mportantly, [d]efendant ha[d] not engaged in any other motions practice").

Further, there is nothing to suggest that CDS was required to preserve its right to arbitrate during Taylor's unemployment proceedings, particularly considering the Arbitration Agreement's terms, which explicitly state it "does not apply to . . . Unemployment Insurance claims[.]" (*See* ECF No. 112-2 at Ex. B). *See Scott v. CVS*, Civ. A. No. 22-03314, 2023 WL 3477827, at *2 n.2 (3d Cir. May 15, 2023) (finding defendant did not waive right to arbitrate where it filed a motion to compel arbitration less than one month after being served with the complaint and where there was nothing to suggest it "was required to preserve its right to arbitrate during EEOC proceedings" (citing *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 598 (3d Cir. 2004)). Accordingly, the Court concludes CDS has not waived its right to compel arbitration in this action.

Therefore, CDS's renewed Motion to Compel Arbitration (ECF No. 112) is **GRANTED**,

and Taylor's Complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE**.[8] Additionally,

to the extent CDS's Motion to Dismiss pursuant to Rule 12(b)(6) was intended to be a motion to

dismiss Taylor's Complaint on the merits, that motion is **DENIED AS MOOT** since the Court

does not reach this merits analysis in light of the Court's decision on CDS's Motion to Compel

Arbitration.[9] *See Zimmerman*, 783 F. Supp. at 869 ("If the court determines the dispute falls within

the scope of the arbitration agreement, it must refer the dispute to arbitration without considering

the merits.").

---

[8] The Court dismisses rather than stays this action pending arbitration because neither party requested the action be stayed pending arbitration. *See Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 490 (E.D. Pa. 2011) (dismissing plaintiffs' amended complaint and closing case after granting defendants' motion to compel arbitration, reasoning that while the Third Circuit "has noted that 'the plain language of [FAA] § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration[,]'" neither party in this case requested the action be stayed pending arbitration (first alteration in original) (quoting *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004))).

[9] Moreover, even if the Court had reached the analysis of CDS's Rule 12(b)(6) motion to dismiss on the merits, it would have had to construe CDS's motion as a Rule 12(c) motion for judgment on the pleadings rather than a Rule 12(b)(6) motion to dismiss because CDS filed its Rule 12(b)(6) motion *after* filing its Answer. *See Mun. Revenue Servs., Inc. v. Xspand, Inc.*, Civ. A. No. 05-00671, 2005 WL 1367416, at *1 (M.D. Pa. June 8, 2005) ("[I]f a party files a Rule 12(b)(6) motion after filing its answer, the district court should simply treat the motion as one for judgment on the pleadings under Rule 12(c). The standard governing Rule 12(c) motions is the same as that governing Rule 12(b)(6) motions[.]" (citations omitted)); *Norwood Co. v. RLI Ins. Co.*, Civ. A. No. 01-06153, 2002 WL 485694, at *1 (E.D. Pa. Apr. 1, 2002) ("[Defendant] is under the mistaken belief that it has filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(6). Before filing this motion, however, [defendant] filed an answer. If defendant had read Rule 12(b)(6), it would have discovered that a party may not file a 12(b)(6) motion *after* it has opted to answer the complaint. . . . Accordingly, this Court will interpret the present motion as a [Rule 12(c)] motion for judgment on the pleadings."); *see also Redhawk Glob., LLC v. World Projects Int'l, Inc.*, Civ. A. No. 11-00666, 2017 WL 4862485, at *4 (S.D. Ohio Sept. 26, 2017) (construing defendants' Rule 12(b)(6) motion to dismiss filed after their answer as a Rule 12(c) motion for judgment on the pleadings, noting that "a party cannot file a motion to dismiss pursuant to Rule 12(b)(6) after filing an answer").

**B.  Taylor's Cross-Motion for Summary Judgment**

Taylor filed a conclusory Cross-Motion for Summary Judgment, stating "insofar as summary judgement [*sic*], as applied to that of any arbitration agreement, [Taylor] can totally demonstrate the ways in which defeat (with regard to the instant motion) are clear." (ECF No. 127 at 41.) In opposition, CDS contends the Court should deny Taylor's Cross-Motion for Summary Judgment because "[t]here is no genuine issue of material fact as to the existence of a valid and enforceable Arbitration Agreement" and that Taylor's "claims fall within the scope of the Arbitration Agreement." (ECF No. 129 at 7.) CDS also asserts there is no basis for Taylor's Cross-Motion and no basis in law to grant Taylor's Cross-Motion. (*Id.* at 2, 7.)

In light of the Court's decision on CDS's Motion to Compel Arbitration, Taylor's Cross-Motion for Summary Judgment (ECF No. 127) is **DENIED AS MOOT**. Moreover, granting summary judgment would be premature at this stage when the parties have not yet engaged in any discovery.[10] *See Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) ("[I]t is well established that a court 'is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.'" (quoting *Dowling v. City of Phila.*, 855 F.2d 136, 139 (3d Cir. 1988))).

**C.  Taylor's Request for Leave to Amend the Complaint**

In both his opposition to CDS's Motion to Compel Arbitration and his Cross-Motion for Summary Judgment, Taylor appears to request leave to amend the Complaint to add a claim for negligence. (*See* ECF No. 126 at 43; ECF No. 127 at 43.) Taylor asserts he wants to add this claim

---

[10] Additionally, Taylor did not comply with the applicable federal and local rules for summary judgment in submitting his Cross-Motion, and he does not specify for what he is seeking summary judgment or the basis for his request as related to his claims in the Complaint. Therefore, it is not clear to the Court that a basis for summary judgment exists at this time.

based on "evidence recently brought to light by way of [CDS's] motion" but he does not specify this evidence. (ECF No. 126 at 3–4, 34–43; ECF No. 127 at 34–43.) In opposition, CDS argues it is not clear from Taylor's briefs specifically what he is arguing related to negligence, but asserts Taylor appears to contend that CDS "somehow was negligent in failing to ensure that he read U.S. Mail that was directed to him and that he admits he received" and that if this is the case, Taylor "has failed to identify any duty of care that [CDS] allegedly owed him" and "also has failed to plead any harm because he has the right to pursue his claims against [CDS] in arbitration." (ECF No. 129 at 6–7.) Accordingly, CDS submits the Court should deny Taylor's request for leave to amend the Complaint to add a claim for alleged negligence. (*Id.* at 1.)

As with Taylor's Cross-Motion, the Court does not reach the merits analysis for Taylor's request for leave to amend the Complaint. Rather, in light of the Court's decision on CDS's Motion to Compel Arbitration, Taylor's request for leave to amend the Complaint (*see* ECF No. 126 at 43; ECF No. 127 at 43) is **DENIED AS MOOT**.

## IV.   Conclusion

For the reasons set forth above, CDS's renewed Motion to Compel Arbitration (ECF No. 112) is **GRANTED**, Taylor's Complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE**, Taylor's Cross-Motion for Summary Judgment (ECF No. 127) is **DENIED AS MOOT**, and Taylor's request for leave to amend the Complaint (*see* ECF No. 126 at 43; ECF No. 127 at 43) is **DENIED AS MOOT**. An appropriate Order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  March 9, 2024